## JESSE B. GILLET *vs.* FRANCIS SHAW, Jr.

*Negligence: in general. Infants and lunatics: liability for torts.*

In negligence cases there are two questions for consideration— the first, whether the negligence is such as to entitle the plaintiff to recover at all; and, secondly, whether the negligence was such as to render the defendant legally liable to respond to him in damages.     p. 510

Acts of lunatics and infants are treated as analogous, and the contract of a person adjudged to be insane can not be enforced against him.     p. 512

Infants and persons of unsound mind are liable for injuries caused by their tortious negligence, and so far as their responsibility is concerned they are held to the same degree of care and diligence as persons of full age and sound mind.     p. 512

But this principle is not applicable when the tort was not committed by the lunatic himself or by his direction; and neither a lunatic nor his property can be made liable for his negligence or wrongs of an employee of his guardian.     p. 514

An adjudged lunatic has no capacity to contract, and can not appoint an agent so long as his lunacy continues.     p. 513

But to hold an infant liable for a tort, the tortious act must be committed by him, himself, or under his immediate view or by his direction or authority.   .          p. 514

Where the guardian of an adjudged lunatic had purchased an automobile and engaged a chauffeur for him, for injuries caused by the automobile and the chauffeur out of the immediate view of the lunatic, and not by his direction or authority, neither the lunatic nor his property is liable.     p. 514

*Decided Feb. 28th, 1912.*

Appeal from the Circuit Court for Howard County (Brashears, J.).

The cause was argued before Boyd, C. J., Briscoe, Pearce, Burke, Thomas, Pattison and Stockbridge, JJ.

*John R. Staum* and *W. W. Parker,* for the appellant.

*Edwin M. Hammond,* for the appellee.

Briscoe, J., delivered the opinion of the Court.

This case presents an interesting legal question and one of more than ordinary importance. The precise question is now for the first time before this Court, and it is conceded, that the cases on the subject, in other jurisdictions are exceedingly few.

The material facts upon which it is raised are practically undisputed, and the legal question is this: Is a lunatic liable for the torts of an employee of his guardian or committee, committed out of his presence and without the authority of the lunatic.

The defendant in the case was adjudicated a lunatic, on the 6th day of August, 1908, in the Probate Court of Middlesex county, Massachusetts, and Francis Shaw, Sr., his father, was duly appointed his guardian or committee, and charged with the care and custody of his person, his real

and personal property. He was brought to Maryland in November, 1909, and placed in charge of Dr. Henry J. Berkeley, of Baltimore City, a specialist upon nervous diseases and mental troubles. Dr. Berkeley located the patient on the Morrison Place, known as Grovemont, near Ilchester, Howard county, Md., and under the supervision of a trained nurse and three male attendants. Prior to coming to Maryland, he had been confined in an institution near the city of Boston and although improved by the treatment here at no time in the years 1910 or 1911 was he capable of regulating his own movements or his property, but had to have nurses and attendants to look after him.

On the 31st of May, 1910, the plaintiff brought this suit in the Circuit Court for Howard County against the defendant, the lunatic, to recover damages for personal injuries received by her on the 27th of May, 1910, while driving a horse and buggy upon a public highway near Ilchester, in that county, by reason of the negligence of an alleged servant or employee (in this case a chauffeur) of the defendant, in operating and running an automobile upon the same highway, in a direction opposite to that in which the plaintiff was driving.

At the trial of the case, in the Court below, upon the conclusion of the evidence upon the part of both plaintiff and defendant, rejected the plaintiff's prayers and granted a prayer upon the part of the defendant, that upon the pleadings and evidence, there was no evidence legally sufficient to entitle the plaintiff to recover, and their verdict must be for the defendant. From a judgment upon the verdict so entered, the plaintiff has appealed.

Ordinarily in negligence cases, like the one now before us, there are two prominent questions presented for the consideration of the Court, and they are, first, whether the negligence is such as to permit or entitle the plaintiff to recover at all, and, secondly, whether the negligence was such as to render the defendant legally liable to respond in damages in a judgment against him.

In the case at bar it will only be necessary for us to consider the second proposition, namely, the legal liability of the defendant, because we are of opinion, upon the special facts of this case, even assuming, the negligence of the chauffeur in charge of the automobile at the time of the accident, it was not the negligence of the defendant, and this being so, he cannot be held personally liable, nor can his estate or property be made liable therefor.

The undisputed facts of the case, upon which this decision must rest, are these: The defendant is an adjudicated lunatic and was so at the time of the accident, that he was unable to manage his property, regulate his own movements or direct those of others. He was located on the Morrison Place, in Howard county, in charge of Dr. Berkeley and a home was established there for his benefit. The automobile was purchased by Dr. Berkeley and paid for by the guardian of the lunatic and was maintained for his benefit, as a part of the medical treatment recommended. The chauffeur in charge of the automobile at the time of the accident was employed by the guardian and not by the lunatic and he testified, that on the morning, when he was running the automobile from Grovemont to Ellicott City, he was going about the business of the establishment and was engaged in the business of the place.

Dr. Berkeley testified, that the automobile was purchased, the chauffeur was employed under the instructions and by the directions of Francis Shaw, Sr., the guardian, and that he the guardian, paid all the bills contracted by him that were necessary to maintain the establishment for the benefit of the lunatic.

It further appears, that neither the chauffeur, nor the automobile was at the time of the accident under the direction, control, authority or in view of the lunatic and that the alleged negligent act was not committed by the lunatic himself or under his immediate view or by his direction or by his express authority.

The contention of the plaintiff, in answer to the defense of insanity, set up on behalf of the defendant, as stated in his brief, "is not that the defendant *per se* is liable for the injuries inflicted and damages incurred by the use of the automobile, but that his estate is responsible for whatever loss and damage the use of his estate has brought upon innocent third persons." In other words, it is urged, that the estate of the defendant, even though he be a lunatic, is liable for the injuries caused by the use of the property by the committee and the chauffeur.

According to the established law in this State, the acts of lunatics and infants are treated as analogous, and the contract of a person adjudged to be insane can not be enforced against him. *Chew* v. *Bank,* 14 Md. 299; *Flack* v. *Gottschalk Co.,* 88 Md. 369; *Key* v. *Davis,* 1 Md. 32.

In *Cross* v. *Kent,* 32 Md. 581, in an action of trespass, for damages against an insane person who had not been adjudged a lunatic and had no guardian, for setting fire to and burning a barn, it was held that a lunatic or an insane person, though not punishable criminally, is liable to a civil action for any tort he may commit. JUDGE MILLER, in delivering the opinion of the Court, in that case said: "The distinction between the liability of a lunatic or insane person in civil actions for torts committed by him and in criminal prosecutions, is well defined and it has always been held and upon sound reason, that though not punishable criminally, he is liable to a civil action for any tort he may commit." 1 *Chitty's Pl.* 76; 3 *Bacon Abr.* 536; *William* v. *Hayes,* 143 N. Y. 422; 26 *L. R. A.* 154, and cases there cited.

The general doctrine is stated in *Sherman and Redfield on Negligence,* sec. 57, to be that infants and persons of unsound mind are liable for injuries caused by their tortious negligence, and so far as their responsibility is concerned they are held to the same degree of care and diligence as persons of sound mind and full age. This is necessary because otherwise there would be no redress for injuries committed by such persons.

While the law as thus stated may be true as to torts committed by the lunatic himself, it can have no application to a case like this where the tort was not committed by the lunatic himself, or by his direction, and it is difficult to see, upon what principle of law or sound legal reason that either the lunatic or his property can be made liable for the negligence or wrongs of an employee or servant of his guardian.

It is well settled that an adjudged lunatic has no capacity to contract and can not appoint an agent, so long as his lunacy continues. *Chew* v. *Bank,* 14 Md. 299; *Greenwood* v. *Greenwood,* 28 Md. 386; *Flach* v. *Gottschalk Co.,* 88 Md. 369; *Story on Agency,* sec. 6, page 5; 31 *Cyc.* 1206; *Mechem on Agency,* sec. 47.

In 22 *Cyc.* 620, the law is thus stated as supported by authority. "It has been laid down that in order to hold an infant liable for a tort, the tortious act must be committed by the infant himself or under his immediate view or by his discretion or authority. For as he can not create an agency or appoint a servant and therefore can not delegate powers to another, he can not guarantee or insure the fidelity, care or skill of such other." *Story on Agency,* sec. 6; 16 *A. & E. Ency. of Law,* 308.

In 31 *Cyc.* 1206, it is said: "One who is *non compos mentis* is naturally incapable of appointing an agent; being unable to comprehend business, he is equally wanting in discretion to select an agent to do such business. Accordingly a lunatic is no more capable of constituting an agent than of binding himself by contract."

The doctrine asserted by these authorities is fully supported by a number of cases. *Pearl* v. *McDowell,* 26 Ky. 658; *Birus* v. *Smith,* 29 Ind. App. 181; *Simpson* v. *Prudential Ins. Co.* 184 Mass. 348.

In *Rooney* v. *People's Trust Company,* 114 N. Y. Supp. 612, it was held that the estate of a lunatic could not be held liable for the torts of one who is not his agent, in the legal sense. And to the same effect are the cases of *Ward* v. *Rogers,* 100 N. Y. Supp. 1056; *Reams* v. *Taylor,* 31 Utah, 288; *Robbins* v. *Mount,* 33 Howard's Practice Rep. 553.

The cases relied upon by the appellant are unlike this and are mostly cases where the negligent act was committed by the lunatic himself, or where the cause of action arose before the lunacy of the defendant, and before the appointment of the guardian or committee, and are not controlling here.

In this case the tort was not committed by the lunatic or under his immediate view or by his direction or authority. The chauffeur of the automobile was the servant and employee of the guardian and not the agent of the lunatic, at least not in the legal sense, so as to bind the lunatic, either personally or to render his property liable, for his personal torts.

We, therefore, hold upon both reason and the great weight of authority that the defendant can not be held liable in this case; first, because the tort was not committed by him personally or in his presence or by his direction; secondly, because not being capable of appointing an agent, he is not personally liable for the acts of one claimed to be his agent and not being personally liable neither his property or estate can be held liable in damages therefor; third, because the tort in this case was not the tort of the lunatic, but the tort of the chauffeur, who was not his agent, but the employee of the guardian; and fourthly, because the tort of a servant or employee of a guardian of a lunatic can not bind the lunatic either personally or render his property liable, under the special facts of this case.

For these reasons, the Court below committed no error, in withdrawing the case from the jury and the judgment will be affirmed.

*Judgment affirmed, with costs.*