Hillsborough, }
April 3, 1923. }

WILSON L. CHARLTON v. ARSENE BRUNELLE.

MAUD E. SIMPSON v. SAME.

A landlord is not liable to his tenant for the mere faulty condition of the leased premises, in the absence of express warranty or deceit.

No action for deceit lies by a tenant against his landlord for a defect in the plan of reconstruction work done before the relation of landlord and tenant existed, though the work was negligently performed.

A landlord's failure to disclose to a prospective tenant the defective condition of his premises does not constitute deceit, in the absence of evidence that the landlord knew of such defect; and mere knowledge of what the construction was, is not knowledge that it was faulty.

CASE, for negligent alteration of a building wall by a landlord, as the result of which it collapsed, causing damage to the personal property of the plaintiffs in their respective premises as his tenants. The jury decided the issue of negligence affirmatively.

Charlton did not become a tenant until the alterations were wholly completed. Simpson and the defendant discussed a proposal for her tenancy of a store on the first floor of the building before the alterations were made. No contract to become a tenant was entered into until the alterations in the wall, which were a part of other changes made, were finished. The wall collapsed about three months after her tenancy commenced, and there was some evidence tending to show that some of her goods had been received into the store prior to her becoming a tenant. There was no written lease between the parties. The defendant seasonably moved for a non-suit and directed verdict in his favor in each of the cases and on these motions the question is reserved and transferred without a ruling whether the plaintiff is or may be entitled to a verdict in either case. The plaintiff Simpson excepted to the finding that no contract for her to become the defendant's tenant was made until the alterations in the wall were finished, as unsupported by the evidence. Transferred by *Allen*, J.

Questions as to the character of the proceedings in the case having been raised at the argument, the parties thereafter obtained the following amendment:

"By agreement the cases were tried together by a jury and on the issue of negligence only. The plaintiffs made no request to

have submitted to the jury as a special question whether the defendant actually knew that the wall was defective and no such question was submitted. It was understood before the trial that the issue of damages should not be determined until the question of liability had been finally determined, and it was also understood that this question was to be transferred to the Supreme Court if the jury decided the issue of negligence affirmatively, as they did. After the verdict of the jury and in connection with the transfer of the case there was a hearing by the Court relative to the facts of the respective tenancies of the plaintiffs. The findings of the Court upon this hearing appear in the last paragraph of the case as heretofore transferred. No questions or facts bearing on liability other than those appearing in the case as first transferred or in this amendment were called to the Court's attention before the first transfer of the case. Both parties expressed their acceptance of it before it was signed and also of all the procedure adopted."

*Doyle & Doyle* (*Mr. Paul J. Doyle* orally), for the plaintiffs.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

PEASLEE, J. Upon the record as originally made up it was impossible to determine what was tried, or how the trial proceeded. It appears, however, from the amendment procured since the argument that a question of negligence was submitted to a jury, and decided in the affirmative, the finding that Simpson did not become a tenant until after the alterations in the building were completed was made by the justice who had presided at the trial, and the parties agreed that if liability should be established the damages should be assessed by a master or referee. It does not appear what duty the jury found to have been violated. The defendant's motions for nonsuits and directed verdicts are transferred without a ruling, but the evidence as to liability is not transferred, and there is no statement of what it tended to prove. Apparently, the situation was that the plaintiffs claimed to recover for the alleged negligence of the landlord, and the defendant challenged the legal position of the plaintiff by moving for a nonsuit. This is the question which has been argued, and the decision of the case here depends upon the answer thereto.

A portion of the building collapsed because of a defect in the plan of certain reconstruction work done upon it by the defendant before

either of the plaintiffs became his tenant. There was no claim at the trial that the landlord knew that the structure was insufficient. It is well settled in this jurisdiction that the landlord is not liable to the tenant for the mere faulty condition of the leased premises, in the absence of express warranty or deceit. *Clark* v. *Sharpe*, 76 N. H. 446, and cases cited; *Rowan* v. *Company*, 79 N. H. 409. It is urged, however, that since the landlord himself erected the insufficient support "negligently," he is chargeable with knowledge of its faulty character. The building was his, and at the time the work was done the plaintiffs were not his tenants. He bore no relation to them, and consequently could not be guilty of any negligence in the legal sense of that term. *Garland* v. *Railroad*, 76 N. H. 556. His erection of an insufficient building involved no breach of any duty toward the plaintiffs, and no liability can be predicated upon such fault.

Unless it is the law that one who erects an unstable building is chargeable with knowledge of its defects, so that his failure to disclose the condition to a prospective tenant amounts to deceit, there is no ground upon which the defendant can be held liable here. While it is true that in certain cases a representation made without knowledge of its falsity can be made the foundation of an action for deceit, the cases go upon the ground that there must be a "conscious indifference, not caring whether it was true or false." There must be "want of belief or conscious disregard for the truth or falsity of his statement." "You must prove a dishonest mental state or condition of mind on the part of the speaker with reference to the truthfulness of his statement." *Shackett* v. *Bickford*, 74 N. H. 57, 59, 60. "The idea that gross negligence can take the place of the dishonest state of mind as an element in an action for fraud is not now the law here." *Follett* v. *Insurance Co.*, 77 N. H. 457, 459, and cases cited.

When it is borne in mind that the only representation that can be relied upon here is the negative one implied from not making disclosure of known facts, it is apparent that a cause of action sounding in tort is not made out. There was no claim at the trial that the defendant knew the building was insufficiently supported. His silence was no more than an implied assertion that he knew of no secret defect in the premises. Such apparently was the fact. The element of the dishonest mental state upon his part is wholly lacking.

The defendant knew what the construction of the building was,

but there was no suggestion at the trial that he knew that such construction was faulty. If the question here were one of warranty of fitness, or of duty to use reasonable care in construction, the plaintiff might prevail. But the ground of liability relied upon is a narrow one, and is not proved by evidence that if the defendant had owed a duty to use care to make the premises safe he would have been held to have known that which, because of such duty, he ought to have known. In the suit for neglect of the duty to use care the failure to know may be relied upon, since the duty imposed is to both know and do according to the rule of reasonable conduct. The failure to know is a form of negligence, and can be relied upon as a legal fault only in cases where there is a duty to use care. *Garland* v. *Railroad*, 76 N. H. 556. Take away that duty, and there is nothing left upon which to base a charge of fault in respect to honest lack of knowledge. The fallacy in the reasoning in the cases holding or suggesting that there may be a liability upon such facts (*Cutter* v. *Hamlen*, 147 Mass. 471; *Cowen* v. *Sunderland*, 145 Mass. 363) lies in the failure to apply this principle, or to recognize that this is purely an action for deceit, and that the dishonest state of mind is an essential element of the wrong complained of. There is a plain difference in fact and morals, as well as in law, between ignorance which is consciously dishonest and that which is entirely honest, although it results from the unconscious failure to be as vigilant as the average man. In short, the defendant was under no duty to know. His only duty was to be honest.

"The sole question presented by the defendant's motion is whether there was evidence from which it could be found that she knew of the defect which caused the injury. . . . The question is not what the defendant ought to have done, or what she ought to have known, but what she did in fact do and know." *Clark* v. *Sharpe*, 76 N. H. 446, 447. In a late Massachusetts case the rule is stated substantially as it is understood here. "This obligation does not exist in the absence of knowledge on the part of the landlord. It does not impose a duty of inspection in order to find defects and consequent liability for negligent performance of such inspection." *Stumpf* v. *Leland*, 242 Mass. 168, 169.

The plaintiff Simpson's exception to the finding that she did not make her contract to become a tenant until after the work upon the building was completed remains to be considered. It appears from the amendment to the case that this finding was made by the presiding justice after the issue of negligence had been tried by a

jury. No exception was taken to this procedure, and the question of its regularity is not raised. The objection and exception are based upon the proposition that the finding was made without evidence to support it. The evidence upon this issue is transferred, and discloses that the landlord testified that there was no bargain made until after the work was done. The assignment of error is untenable; and the question what the rights of the parties would have been if the alterations of the building had been made after a contract for a future tenancy had been entered into does not arise.

Upon the record, the defendant was entitled to a nonsuit in each case. Since the case was argued, the plaintiffs have filed in the superior court a motion that the issue of the defendant's knowledge that there was a secret defect in the building be submitted to a jury. Copies of the papers have been filed here. This is in substance a motion for a further trial. It presents an issue which has not been tried, and the determination of which is essential to the ascertainment of the rights of the parties.

*Case discharged.*

YOUNG, J., was absent: the others concurred.